T.C. Memo. 2004-127

UNITED STATES TAX COURT

TERI GEISEN ROOKS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8392-02.                    Filed May 27, 2004.

Teri Geisen Rooks, pro se.

<u>Louise R. Forbes</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined that petitioner
qualifies for partial relief from joint and several liability
pursuant to section 6015(f) for 1992.[1]  The issue for decision is

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

whether petitioner is entitled to a refund of overpayments respondent applied to her 1992 tax liability.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

In 1992, petitioner married John F. Izzi. Petitioner and Mr. Izzi filed a joint Federal income tax return for 1992 (1992 return).

Respondent examined the 1992 return. Respondent determined a $7,058 deficiency and an $823 addition to tax[2] for 1992. The deficiency and addition to tax resulted from early distributions from petitioner's pension and Mr. Izzi's pension during 1992-- petitioner's taxable distribution was $13,378 and Mr. Izzi's taxable distribution was $16,026. Of the additional $7,881 respondent determined was due, 45.5 percent ($3,585.86) was attributable to petitioner's pension distribution and 54.5 percent ($4,295.14) was attributable to Mr. Izzi's pension distribution. Ultimately, petitioner agreed to respondent's determination (i.e., that a $7,058 deficiency and an $823 addition to tax were due for 1992).

---

[2] From the record, it is unclear whether this was an addition to tax or a penalty. The parties stipulated that it was an addition to tax. For clarity, we shall refer to this amount as an addition to tax.

Petitioner and Mr. Izzi started filing separate income tax returns in 1994.

In 1997, petitioner and Mr. Izzi divorced.

Petitioner overpaid her income taxes for 1998, 1999, 2000, and 2001 in the amounts of $2,871, $3,268, $1,801, and $1,422, respectively.  Petitioner received a refund of her 2000 tax of $1,801.

On March 14, 2001, petitioner mailed respondent a Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief).  Petitioner solely requested equitable relief for 1992.  Petitioner claimed to have paid $5,189.62 of the $7,881 owed for 1992.  Petitioner also noted a permanent restraining order, issued by a local court, against Mr. Izzi relating to a felony committed against her family.

On February 13, 2002, Appeals Officer Therese A. Xavier wrote to petitioner in response to a telephone message she received from petitioner on February 8, 2002.  Ms. Xavier attached a copy of petitioner's 1992 nonmaster file transcript detailing assessments (including interest), payments, and petitioner's balance for 1992 (1992 nonmaster file transcript).

Petitioner's 1992 nonmaster file transcript shows petitioner had a balance due, including interest, of $2,182.26 as of

February 28, 2002.[3]  Petitioner's 1992 nonmaster file transcript also shows that respondent essentially had granted some form of section 6015 relief to petitioner.  Respondent allocated $3,211 of the tax (approximately 45.5 percent) and $374.47 of the addition to tax (45.5 percent) for 1992 to petitioner.  Starting with June 1993, respondent assessed interest on these amounts quarterly.  On April 15, 1999, respondent applied $1,921.62 of petitioner's 1998 overpayment to reduce the balance of the tax allocated to petitioner.[4]  On April 15, 2000, respondent applied $1,998.12 of petitioner's 1999 overpayment to reduce the balance of the tax allocated to petitioner.  Respondent also applied $515.29 of petitioner's 1999 overpayment to reduce the balance of the addition to tax allocated to petitioner.

On February 14, 2002, respondent mailed petitioner a notice of determination concerning your request for relief from joint and several liability under section 6015 (notice of determination).  Respondent determined that petitioner was eligible for relief pursuant to section 6015(f) of $3,585[5] for

---

[3]  It is unclear why the transcript shows the amount petitioner's balance will be as of Feb. 28, 2002, rather than as of the date the transcript was printed.

[4]  Respondent applied the remainder of petitioner's 1998 overpayment ($949.38) to petitioner's outstanding employment tax liabilities.

[5]  The similarity of numerical figures present in this case appears to be no more than coincidence.

her 1992 income tax liability. Respondent determined that petitioner remained liable for the remaining $1,801 of the $5,386[6] liability for 1992.

Form 2866, Certificate of Official Record, showed petitioner's account balance for 1992, as of March 21, 2002, as $5,385.56. This was based on a tax assessment of $7,058, a penalty assessment of $823, an interest assessment of $2,684.48, fees and costs of $10, a $1,921.62 credit applied on April 15, 1999, a $3,268 credit applied on April 15, 2000, a $1,801 credit applied on April 15, 2001, and a credit reversal of $1,801 applied on April 15, 2001.

## OPINION

Petitioner does not dispute respondent's determination that she is entitled to partial relief pursuant to section 6015(f). Petitioner essentially argues that, in light of respondent's granting partial section 6015(f) relief, respondent has not correctly credited her account for 1992 and that she is due a refund. Respondent argues that the Court does not have jurisdiction to determine whether respondent properly credited petitioner's payments to her account or whether petitioner is entitled to a refund to the extent attributable to his determination that petitioner is entitled to section 6015(f) relief. Respondent is mistaken.

---

[6] This amount included interest.

Section 6015(g) governs the allowance of credits and refunds in cases where a taxpayer is granted relief pursuant to section 6015. Section 6015(g)(1) provides: "Except as provided in paragraphs (2) and (3), notwithstanding any other law or rule of law (other than section 6511, 6512(b), 7121, or 7122), credit or refund shall be allowed or made to the extent attributable to the application of this section." Accordingly, we shall proceed to determine the proper amount owed by, or to, petitioner pursuant to section 6015(g). See Washington v. Commissioner, 120 T.C. 137 (2003); see also Bartman v. Commissioner, T.C. Memo. 2004-93 (determining the effect of the Commissioner's crediting, pursuant to section 6402(a), the taxpayer's overpayment for 1997 to the liability for 1995 when the Commissioner determined the taxpayer was entitled to relief pursuant to section 6015(f) for 1995).

Section 6511 requires that a claim for refund or credit of an overpayment of any tax in respect of which the taxpayer is required to file a return must be filed within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of the periods expires later. Washington v. Commissioner, supra at 160. On March 14, 2001, petitioner filed her request for section 6015 relief. This request encompasses a refund request. Id. at 162; see Bartman v. Commissioner, supra. Respondent made his earliest refund offset to petitioner's 1992

tax year on April 15, 1999. Accordingly, petitioner's claim was timely.

At trial, respondent explained that he had granted petitioner section 6015(f) relief for the portion of the 1992 tax liability that was not attributable to her (54.5 percent) and that petitioner remained liable for the portion of the 1992 tax liability that was attributable to her (45.5 percent). Petitioner does not dispute this determination or argue for a different allocation.

Petitioner's 1992 nonmaster file transcript appears to reflect this determination by allocating 45.5 percent of the tax and addition to tax for 1992 to petitioner. In the notice of determination, however, respondent appears to have granted relief only on the portion of the 1992 liability that remained outstanding around the date of the determination ($5,386) as listed in the Form 2866.[7] This was inappropriate. See Washington v. Commissioner, supra.

Petitioner's claim essentially is that respondent's calculation in the notice of determination is incorrect, she does not owe $1,801, and she may be due a refund. Petitioner conceded at trial that she was liable for the portion of the 1992 tax liability that was attributable to her (45.5 percent). We cannot

---

[7] Furthermore, the amount of relief granted was not 54.5 percent of the then-outstanding balance.

tell from the notice of determination how respondent arrived at the $1,801 amount owed by petitioner.  Accordingly, we shall review petitioner's 1992 liability step by step.

As an initial matter, we agree with respondent's computation contained in petitioner's 1992 nonmaster file transcript of the amounts allocable to petitioner for 1992 after granting partial section 6015 relief.  Accordingly, respondent was correct to compute the amount of tax and the addition to tax owed by petitioner as $3,211 and $374.47, respectively.

On April 15, 1999, respondent applied petitioner's 1998 overpayment as follows:  $1,921.62 to the tax allocated to petitioner for 1992 and $949.38 to petitioner's employment tax liabilities.[8]

Respondent claims that he applied petitioner's 1999 overpayment of $3,268 to the amount of the 1992 liability respondent allocated to petitioner pursuant to section 6015(f). On April 15, 2000, respondent applied petitioner's 1999 overpayment to petitioner's 1992 nonmaster file transcript as follows:  $1,998.12 to the tax allocated to petitioner for 1992 and $515.29 to the addition to tax allocated to petitioner for 1992.  This totals only $2,513.41.  Although the Form 2866 reflects a $3,268 credit for 1999 to the total liability (of

---

[8] Petitioner's employment tax liabilities are not before the Court.

petitioner and Mr. Izzi) for 1992, petitioner's 1992 nonmaster file transcript does not reflect a credit for the full amount of the 1999 overpayment to the amount of the 1992 liability respondent allocated to petitioner pursuant to section 6015(f). The remaining $754.59 of petitioner's 1999 overpayment is unaccounted for. Upon the basis of the foregoing, we conclude that respondent should have credited, as of April 15, 2000, an additional $754.59 to petitioner to reduce the amount of the 1992 liability respondent allocated to petitioner pursuant to section 6015(f).

Respondent withheld petitioner's overpayment for 2001. Petitioner's 2001 refund postdated the documents submitted to the Court. Accordingly, neither the $1,801 listed on the notice of determination nor the $2,182.26 reflected in petitioner's 1992 nonmaster file transcript as petitioner's balance as of February 28, 2002, included any credit for her 2001 overpayment. Respondent shall credit, as of April 15, 2002, $1,422 to reduce the amount of petitioner's liabilities.

In addition to the application of credits to petitioner's 1992 nonmaster file, respondent shall recalculate the interest accrued on petitioner's 1992 nonmaster file which reflects the allocation of liability respondent granted pursuant to section 6015(f). Only after such a recalculation will it be possible to determine whether petitioner has a balance due or whether there

will be an overpayment (i.e., petitioner may be entitled to a refund).  See Rosenthal v. Commissioner, T.C. Memo. 2004-89 n.6; Ziegler v. Commissioner, T.C. Memo. 2003-282.

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.