**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-8

UNITED STATES TAX COURT

SUSAN R. ZIMMERMAN-PHILLIPS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2298-12S.                         Filed January 15, 2014.

<u>Charles J. Ladd</u>, for petitioner.

<u>Mindy Y. Chou</u>, <u>Robert D. Heitmeyer</u>, and <u>John D. Davis</u>, for respondent.

SUMMARY OPINION

LARO, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner petitioned the Court under section 6015(e)(1) in response to a notice of determination denying her request for relief from joint and several liability under section 6015 for 2009. The issues to be decided are:

(1) whether a 2009 joint Federal income return filed by petitioner's former husband and not signed by petitioner is a valid joint return. We hold that it is; and

(2) whether petitioner is entitled to equitable relief from joint and several liability under section 6015(f) for unpaid tax related to the 2009 joint Federal income tax return. We hold that she is not.

## Background

Some facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Michigan when she petitioned the Court.

Petitioner and her former husband, Thomas Phillips, were married for 25 years. Starting in 1988 petitioner and Mr. Phillips filed income tax returns with the Internal Revenue Service as "Married filing jointly". Each year they created a file for their respective tax documents. As petitioner received tax documents, she would put them in the file. Mr. Phillips was always responsible for completing the

couple's tax return. After completing the tax return, Mr. Phillips would give it to petitioner to sign. Petitioner never reviewed the returns herself.

In July 2009 petitioner and Mr. Phillips separated,[2] but their respective attorneys advised them to file jointly for that year. As she had done in previous years, in January 2010, petitioner established a file for her tax documents from the previous year. Petitioner and Mr. Phillips were not in regular communication, but at the end of February or in March 2010, petitioner gave Mr. Phillips the tax documents file so that he could complete and file the 2009 joint Federal income tax return (2009 joint return).

When she gave Mr. Phillips the tax document file, petitioner "assumed that he [Mr. Phillips] would prepare the taxes and then I would sign them and then he would file them." However, the file petitioner provided to Mr. Phillips was incomplete. Petitioner had not yet received her Form W-2, Wage and Tax Statement, from her employer, Advanced Bionics, LLC,[3] but she was unaware of this fact. At some time before April 15, 2010, petitioner received the Form W-2 from Advanced Bionics, LLC, as well as other tax documents. The Form W-2

---

[2]Petitioner and Mr. Phillips' divorce became final on March 16, 2010.

[3]The record does not reveal petitioner's position at Advanced Bionics, LLC, but the record states that petitioner has a master's degree in science.

reported that petitioner had received $74,230 of taxable income and had had $8,434 withheld for 2009.[4]

During March and April petitioner attempted to contact Mr. Phillips regarding various matters, including the additional tax documents. Mr. Phillips never responded to her messages.

On April 16, 2010, petitioner finally reached Mr. Phillips by telephone. Mr. Phillips informed petitioner that he had already electronically filed the 2009 joint return. When petitioner objected that she had not signed the return, Mr. Phillips stated that because the return had been filed electronically, her signature had not been necessary. According to petitioner, she was not aware at that time that any income had been omitted from the 2009 joint return. During the ensuing months petitioner repeatedly asked Mr. Phillips for a copy of the 2009 joint return so that she could complete her daughter's college financial aid applications. Petitioner testified that she did not ask for a copy of the 2009 joint return because she thought that there was something wrong with it.

In August 2010 petitioner eventually met with Mr. Phillips, who gave her a copy of the 2009 joint return with the bottom of page 2 torn off. The missing

---

[4]Petitioner's Advanced Bionics, LLC, income included a buyout of stock options she held in the company.

portion of the return included the return's final tax calculation and a refund claim of $9,460.[5]  During that meeting, petitioner also showed Mr. Phillips the tax documents that she had previously not given him.  Petitioner then understood, on the basis of Mr. Phillips' reaction, that a mistake had been made on the 2009 joint return.

In the fall of 2010, after receiving the partial return from Mr. Phillips, petitioner contacted the Internal Revenue Service (IRS) to discuss the 2009 joint return, but she was unsuccessful because Mr. Phillips had refused to provide her with the return's electronic filing personal identification number (PIN).  Petitioner did not attempt to file a Form 1040X, Amended U.S. Individual Income Tax Return, to report her missing income from Advanced Bionics, LLC.

On March 14, 2011, respondent issued a CP2000 notice to petitioner and Mr. Phillips proposing an increase in tax for 2009 of $25,393 arising from petitioner's unreported income, penalties of $2,678, and interest owed of $578.  The CP2000 notice also reported their 2009 tax withheld of $12,001, resulting in a total balance due of $16,648.  In response, petitioner filed Form 8857, Request for Innocent Spouse Relief, on May 31, 2011.  On Form 8857, petitioner asserted that

---

[5]When petitioner finally received a complete copy of the 2009 joint return, she was surprised by the refund claim because in the past she and Mr. Phillips had owed tax.  Petitioner never received any portion of the refund payment.

she did not realize that the 2009 joint return had underreported her income because she had not seen it before it was filed.

The IRS rejected petitioner's request for innocent spouse relief. Petitioner then filed a Form 12509, Statement of Disagreement, on August 26, 2011. Her case was forwarded to the IRS Office of Appeals (Appeals) for further consideration. After reviewing petitioner's case, on November 1, 2011, Appeals Officer Lori Cox issued an Appeals case memo in which she denied petitioner's innocent spouse claim under section 6015(b), (c), and (f). Appeals Officer Cox found that petitioner had tacitly consented to Mr. Phillips' filing the 2009 joint return and that the basis for the deficiency was petitioner's unreported income from Advanced Bionics, LLC. On November 8, 2011, Appeals mailed petitioner a final Appeals determination denying her request for relief and informing her that she was entitled to file a petition with the Court on or before February 6, 2012. Petitioner timely filed her petition.

Discussion

I.     2009 Joint Federal Income Tax Return

Section 6013(a) provides that a husband and wife may file a joint income tax return.[6]  Generally, a joint income tax return must be signed by both spouses. Sec. 1.6013-1(a)(2), Income Tax Regs.

Petitioner argues that she is not liable for tax arising from the 2009 joint return because it is not her return.  Petitioner claims that because her husband filed the return without her signature, she never acquiesced to filing the return, and therefore the return was fraudulent.

Whether an income tax return is a joint return or a separate return of the other spouse is a question of fact.  Harrington v. Commissioner, T.C. Memo. 2012-285, at *8 (citing Heim v. Commissioner, 27 T.C. 270 (1956), aff'd, 251 F.2d 44 (8th Cir. 1958)).  The determinative factor in deciding whether a filed return qualifies as a joint return is whether a husband and wife intended to file a joint return.  Ziegler v. Commissioner, T.C. Memo. 2003-282, 86 T.C.M. (CCH)

_____

[6]Sec. 6013(d)(1) provides that "the status as husband and wife of two individuals having taxable years beginning on the same day shall be determined * * * as of the close of such year".  Since petitioner and Mr. Phillips have been filing joint returns since 1988, their 2009 taxable years began on the same day. Furthermore, because their divorce was not finalized until March 16, 2010, petitioner and Mr. Phillips were eligible to file a joint return for 2009.

423, 424 n.4 (2003) (citing <u>Stone v. Commissioner</u>, 22 T.C. 893 (1954)). Intent is determined as of the time the return was filed. <u>Parker v. Commissioner</u>, T.C. Memo. 1978-23, 37 T.C.M. (CCH) 144, 145 (1978). In evaluating intent, this Court has considered whether the nonsigning spouse filed a separate return, whether the nonsigning spouse objected to the joint filing, and whether prior filing history indicates an intent to file jointly. <u>Harrington v. Commissioner</u>, at *8.

Although the Commissioner's determination generally has a presumption of correctness and the taxpayer has the burden of proving it to be wrong, <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933), the presumption is removed in the case of a spouse who does not sign a purported joint return, and the burden of producing additional evidence on the issue shifts to the Commissioner, <u>Carrick v. Commissioner</u>, T.C. Memo. 1991-502, 62 T.C.M. (CCH) 938, 940 (citing <u>O'Connor v. Commissioner</u>, 412 F.2d 304, 309 (2d Cir. 1969), <u>aff'g in part, rev'g in part</u> T.C. Memo. 1967-174). Accordingly, while the ultimate burden of proof remains with the taxpayer, the Commissioner bears the burden of going forward with evidence from which the Court can conclude that the nonsigning spouse intended to file the purported joint return. <u>Esposito v. Commissioner</u>, T.C. Memo. 1991-262, 61 T.C.M. (CCH) 2854, 2857 (1991) (citing <u>Douglass v. Commissioner</u>, T.C. Memo. 1984-369).

Respondent has met his burden of production by introducing evidence that petitioner intended to file a joint return with her former husband. First, petitioner did not file a separate return for 2009, even though she had substantial income. Second, since 1988 petitioner and Mr. Phillips had always filed their Federal income tax returns as "Married filing jointly". Third, petitioner's and Mr. Phillips' respective attorneys advised them to file jointly for 2009. Finally, and most compellingly, petitioner created a file for her 2009 tax documents which she gave Mr. Phillips so that he could file their 2009 return. Petitioner testified that when she gave Mr. Phillips her tax documents file, she "assumed that he would prepare the taxes and then I would sign them and then he would file them."[7] In the light of these facts, petitioner has not met her burden of persuasion to establish that she did not intend to file a joint return with Mr. Phillips. Consequently, the 2009 joint return Mr. Phillips filed is a valid joint return.

---

[7]Although petitioner objected that she did not sign the return, she did not object to the filing of a joint return, nor did she object to the content of the 2009 joint return. A nonsigning spouse's objection to a joint return, on the basis that the return lacked the nonsigning spouse's signature, does not render the joint return invalid. Parker v. Commissioner, T.C. Memo. 1978-23, 37 T.C.M. (CCH) 144, 145-146 (1978) (finding the intent to file a joint return where "[the nonsigning spouse] intended to file a joint return * * * and objected later only to someone signing her name to the return, not to the filing of a joint return").

II.     Equitable Relief Under Section 6015(f)

When a husband and wife elect to file a joint Federal income tax return pursuant to section 6013(a), each spouse becomes jointly and severally liable for the tax due on the spouses' aggregate income. See sec. 6013(d)(3). An individual who has made a joint return may elect to seek relief from joint and several liability under subsections (b), (c), and (f) of section 6015. Sec. 6015(a), (f). Petitioner concedes that she is ineligible for relief under subsection (b) or (c) of section 6015.

A requesting spouse who is unable to qualify for relief pursuant to section 6015(b) or (c) may nonetheless avoid joint and several liability if, taking into account all the facts and circumstances, it is inequitable to hold that individual liable for any unpaid tax or deficiency. Sec. 6015(f)(1) and (2). Where the Commissioner denies a requesting spouse equitable relief under section 6015(f), that individual may petition the Court to determine the appropriate relief available. Sec. 6015(e)(1)(A). Our statutory charge under section 6015 is to determine whether a taxpayer is entitled to equitable relief on the basis of all the facts and circumstances. Sriram v. Commissioner, T.C. Memo. 2012-91, 103 T.C.M. (CCH) 1482, 1486 (2012). We determine de novo whether equitable relief is warranted under section 6015(f). Porter v. Commissioner, 132 T.C. 203, 210 (2009).

Petitioner bears the burden of proof with respect to her entitlement to the aforementioned relief.  See Rule 142(a).

Pursuant to his grant of authority under section 6015(f), in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296,[8] the Commissioner established guidelines for determining whether an individual qualifies for equitable relief.  The Court considers these guidelines in the light of the attendant facts and circumstances to determine whether equitable relief is appropriate, but is not bound by them.  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Sriram v. Commissioner, 103 T.C.M. (CCH) at 1484-1485.

The guidelines begin by establishing threshold requirements that, the Commissioner contends, must be satisfied before an equitable relief request may be considered.  See Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400. Those conditions are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting

---

[8]Rev. Proc. 2013-34, 2013-43 I.R.B. 397, supersedes Rev. Proc. 2003-61, 2003-2 C.B. 296, and is effective for requests for relief filed on or after September 16, 2013, or for requests for equitable relief pending on September 16, 2013, whether with the IRS, with Appeals, or in a case docketed in a Federal court.  Rev. Proc. 2013-34, sec. 7, 2013-43 I.R.B. at 403.  In their briefs, the parties relied on Rev. Proc. 2003-61, supra, because it was still in effect at the time their briefs were submitted.

spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions,[9] the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.

Respondent concedes that petitioner meets the first six conditions.[10] However, respondent argues that petitioner fails to meet the seventh condition because the income tax liability in this matter is solely attributable to petitioner's income. It is thus petitioner's burden to establish that she meets an exception to this threshold requirement. See Rule 142(a).

Petitioner argues the fraud exception is applicable because her former husband committed fraud by filing their 2009 joint return without her signature.

---

[9]These exceptions are: (1) attribution solely due to the operation of community property law; (2) nominal ownership, (3) misappropriation of funds; (4) abuse; and (5) fraud committed by the nonrequesting spouse. Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. at 399-400.

[10]Rev. Proc. 2013-34, supra, relaxed the timely filing requirements of Rev. Proc. 2003-61, supra. As respondent concedes that petitioner satisfied the more restrictive requirements of the earlier revenue procedure, we deem petitioner to have met the timely filing requirements in this matter.

This argument must fail. The failure to include petitioner's income from Advanced Bionics, LLC, on their 2009 joint return was hardly the fault (much less fraud) of petitioner's former husband. Rather, it was petitioner who gave her former husband an incomplete tax documents file, which did not include the Form W-2 from her employer, and it was petitioner who further failed to inform him of this fact. Therefore, the fraud exception to the seventh threshold condition set forth in Rev. Proc. 2013-34, supra, is inapplicable. Petitioner has failed to satisfy the threshold conditions for equitable relief set forth in Rev. Proc. 2013-34, supra.

Our analysis, however, does not end here. As we stated above, although we consider the Commissioner's guidelines for equitable relief, we are not bound by them. See Pullins v. Commissioner, 136 T.C. at 438-439. Thus, we determine de novo on the basis of all the facts and circumstances whether petitioner is entitled to equitable relief. See sec. 6015(f). We hold that she is not.

As early as April 16, 2010, after speaking with Mr. Phillips, petitioner should have known that the 2009 joint return did not include her income from Advanced Bionics, LLC. Instead of taking steps to determine what impact the omitted tax documents may have had on their 2009 tax liability, petitioner merely waited for Mr. Phillips to give her a copy of the 2009 joint return. In addition, although petitioner contacted the IRS after receiving a copy of the return in

August 2010, her effort to discuss the return with the IRS was unsuccessful because she did not have the return's electronic filing PIN. Rather than seeking professional advice or filing an amended return, petitioner again did nothing. Petitioner intended to file a joint return with Mr. Phillips. To that end, it was her responsibility to ensure that Mr. Phillips received all her tax documents, it was her responsibility to inform Mr. Phillips that the file was incomplete, and it was her responsibility to correct any errors on the return or bear the consequences of her inaction. Petitioner's excuse that "at that point, I couldn't do any more" is unavailing. She is therefore not entitled to equitable relief from joint and several liability under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.